# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL NO. 2:18-CR-188-DBH |
| | ) | |
| AUSTIN SANTORO, | ) | |
| | ) | |
| DEFENDANT | ) | |

## DECISION AND ORDER ON DEFENDANT'S REQUEST FOR RELEASE

Under the Bail Reform Act, a judicial officer dealing with a request for pretrial or presentence release must assess the defendant's risk of flight and dangerousness. See 18 U.S.C. § 3143(a)(1). But for anyone found guilty of certain crimes, Congress has made presentence detention *mandatory*[1]—regardless of that assessment—unless "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). This defendant has pleaded guilty to violating 18 U.S.C. § 875(c), a provision that imposes up to five years of prison on "[w]hoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another."[2] Initially detained, he now seeks release pending sentencing. The parties dispute whether he must meet the "exceptional reasons" requirement. After briefing and

---

[1] Exceptions listed in § 3143(a)(2) (a substantial likelihood of the granting of a motion for acquittal or a new trial; or a government recommendation of no imprisonment) do not apply here.
[2] The defendant also pleaded guilty to an identity theft offense, but that is not a mandatory detention offense.

oral argument on January 22, 2019, I conclude that the "exceptional reasons" requirement applies.[3]

The parties agree that in this case, 18 U.S.C. § 3142(f)(1)(A)[4] lists the relevant categories of crimes for determining whether detention is mandatory. They are: "a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed."

Here, only the first category, "a crime of violence," is potentially applicable. The parties disagree over whether the "10 years or more" condition at the end of the quoted list modifies that first category, or only the category next to which it appears (*i.e.*, the last category, one not pertinent here). In this case, the defendant confronts a sentence of no more than 5 years in prison, so if the "10 years or more" limitation applies, his detention would not be mandatory. The parties also disagree whether the offense to which the defendant has pleaded guilty is a "crime of violence."

***The "10 Years or More" Condition***

First, I conclude that the "10 years or more" limitation does *not* apply to a conviction for a crime of violence.

The Supreme Court recently confronted a similar question in Lockhart v. United States, 136 S. Ct. 958 (2016). There the statute involved a list of three categories where, like here, the third category contained a limiting phrase whose

---

[3] I announced my ruling at the hearing, but said that I would issue this written opinion.
[4] That is the relevant provision because the mandatory detention provision, 18 U.S.C. § 3143(a)(2), refers to a finding of guilty for a crime described in 18 U.S.C. § 3142(f)(1)(A) (along with other crimes that are not relevant here).

applicability to an earlier category was in question.[5] The Supreme Court held that the limiting phrase modified only "the antecedent immediately preceding it." Id. at 962. It explained that when a statute "include[s] a list of terms or phrases followed by a limiting clause, we have typically applied an interpretive strategy called the 'rule of the last antecedent.'" Id. (quoting Barnhart v. Thomas, 540 U.S. 20, 206 (2003)). Under that "rule," the limiting phrase ordinarily modifies only the phrase immediately preceding it. The rule is not absolute, see id. at 963, 965, but it is pertinent. In an earlier case, Paroline v. United States, 572 U.S. 434, 447 (2014), the Court noted a competing "series-qualifier" canon, where the limiting phrase should apply to the entire list; the defendant argues that I should apply that canon here. But Paroline said that canon was suitable to apply when the items in the list "are followed by a clause which is applicable as much to the first and other words [here, categories] as to the last." Id. In this case, the limitation phrase cannot be applicable to the second category in the list, section 1591 violations, because all the offenses in that category have penalties of over 10 years (unlike the other two categories). Therefore, the rationale for the Paroline series-qualifier canon does not apply.[6] I conclude that under Lockhart the "10 years or more" limitation does not apply to the first category, a crime of violence.

As in Lockhart, the context of this provision also "fortifies the meaning [the last antecedent] principle commands." Lockhart, 136 S. Ct. at 963. First, it

---

[5] A prior conviction "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct *involving a minor or ward*." Lockhart v. United States, 136 S. Ct. 958, 961 (2016) (emphasis added).
[6] Lockhart mentioned Paroline, but found it inapplicable. Id. at 965.

makes no sense to apply the limiting phrase to all three categories in the list here, because it has no bearing on the second category ("a violation of section 1591"), a provision where all possible penalties exceed 10 years.

Second, the enactment history and context show that the "10 years or more" limitation does not apply to crimes of violence. Until December 2004, only crimes of violence were referred to in this subsection, and there was no prison time limitation. See 18 U.S.C. § 3142(f)(1)(A) (2003) (amended 2004). Nothing in later amendments shows that in enlarging the mandatory detention list Congress was trying to narrow the crimes of violence category. In the "Pretrial Detention of Terrorists Act of 2004[7]" under the heading "Presumption for Pretrial Detention in Cases Involving Terrorism," Congress simply inserted the language: "or an offense listed in section 2332b(g)(5)(B) [acts of terrorism] for which a maximum term of imprisonment of 10 years or more is prescribed." Pub. L. No. 108-458, § 6952(2), 118 Stat. 3638 (2004). That insertion suggests that Congress was adding a self-contained new category, not changing the scope of the existing category, crimes of violence. Then in 2008, Congress added the third category, section 1591 (sex trafficking crimes), where prison terms always exceed 10 years. If the existing two categories were limited as a list by the 10-year prison requirement following 2332b(g)(5)(B), the logical place to add the new category would have been at the end, *outside* the limitation clause. But instead, in Subtitle C of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Congress inserted it between the two existing

---

[7] This is Subtitle K of the Intelligence Reform and Terrorism Prevention Act of 2004.

categories, Pub. L. No. 110-457, § 224(a), 122 Stat. 5044 (2008), further evidence that the entire list was not limited.

Thus, Lockhart and the enactment history of this statute lead me to the conclusion that the limitation at the end of the list does not apply to the first category in the list, a crime of violence.[8] I realize that in reaching this conclusion I disagree with a handful of other district courts. See, e.g., United States v. Persico, 2017 WL 3669554, at *3 (E.D.N.Y. Aug. 23, 2017); United States v. Baldazo, 2012 WL 12947283, at *1 (N.D. Ind. Apr. 19, 2012); United States v. Madoff, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009); United States v. Chavez-Rivas, 536 F. Supp. 2d 962, 965-66 (E.D. Wis. 2008). But these cases simply announced their assertion that the limitation applies to crimes of violence and did not explain how they reached that conclusion.[9]

*Crime of Violence*

Second, I conclude that this defendant has pleaded guilty to a crime of violence. The Bail Reform Act has its own definition for crime of violence. It states (in the portion relevant to the dispute here):

> The term "crime of violence" means—
>
> (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;
>
> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense[.]

---

[8] I do not rely on the lack of a comma in the final category, although the First Circuit does find commas important. See O'Connor v. Oakhurst Dairy. 851 F.3d 69 (1st Cir. 2017).
[9] There are other cases that say it does apply, but these cases likewise do not directly address the relevant issues. See United States v. Rausch, 746 F. Supp. 2d 1192 (D. Colo. 2010); United States v. Barlow, 2009 WL 799655 (D. Utah Mar. 24, 2009).

18 U.S.C. § 3156(a)(4). This is a definition used in several places throughout the federal criminal code. The first portion is commonly called the "force clause" and the second is called the "residual clause."

The parties ask me to determine whether this defendant's crime is a crime of violence under the force clause, not the residual clause,[10] and they rely upon cases that arise in other contexts such as sentencing and deportation. They agree that in my assessment, I should look not at the facts of the case, but only at the elements of the crime as the statute lists them. Gov't. Mem. at 3-4 (ECF No. 77); Def. Mem. at 7 (ECF No. 76). This is called the categorical approach.[11]

---

[10] The government has not argued that the residual clause applies here. It may be that a threat alone does not "by its nature" involve a substantial risk that physical force actually will be used against another person, a requirement of the residual clause. If the residual clause were applicable, I would follow United States v. Douglas, 907 F.3d 1 (1st Cir. 2018), and apply not the categorical approach, but a case-specific, real-world analysis of the conduct to which the defendant pleaded guilty. Douglas involved a multi-count indictment where a defendant pleaded guilty to a Hobbs Act robbery conspiracy charge. The issue was whether a separate charge that he had carried or brandished a firearm in relation to the robbery was in relation to a "crime of violence," *i.e.*, whether the Hobbs Act robbery conspiracy was a crime of violence. Douglas concluded that the many precedents interpreting "crime of violence" and using the categorical approach under the residual clause all involved assessment of previous (often state) convictions and were not pertinent when a judge was considering "a contemporaneous offense rather than a prior conviction." 907 F.3d at 8-9 (emphasis original). Douglas reached that conclusion largely because a contemporaneous offense "does not raise either the practical or the Sixth Amendment right-to-trial concerns that led the Supreme Court to adopt the categorical approach. . . ." Id. at 9:
> This is a crucial distinction. At its core, the categorical approach is a thoughtful judicial construct designed for a particular context: the judicial consideration, under federal statutes, of prior convictions, often by different tribunals. . . . [T]he Supreme Court fashioned and refined the categorical approach both for practical and constitutional reasons that are specific to the consideration of a *prior* conviction.

Id. at 13 (emphasis added). Instead, Douglas ruled, when a trial court is dealing with contemporaneous charges under the residual clause, it should look at "case-specific" information, "the 'real-world conduct'." Id. at 4, 16.
If that conclusion was appropriate in Douglas with contemporaneous charges, it is even more so when the issue is whether it is proper to release a defendant before sentencing on the particular charge to which he has pleaded guilty and on which he will be sentenced.
But Douglas also recognized that First Circuit precedents use the categorical analysis for the force clause, id. at 9 n.12, and I do so here.

[11] In cases where the crime has two or more alternative elements (a so-called divisible statute), I am permitted to look at limited documents to determine which alternative is at stake. That is

6

As the First Circuit said in United States v. Taylor, 848 F.3d 476, 491 (1st Cir.), cert. denied, 137 S. Ct. 2255 (2017), in determining whether "a crime requires . . . [the] threatened use of violent force . . . we consider the elements of the crime of conviction, not the facts of how it was committed, and assess whether violent force is an element of the crime."

The felony offense to which this defendant pleaded guilty is communicating a threat to injure the person of another. (According to Elonis v. United States, 135 S. Ct. 2001, 2011-12 (2015), a defendant has to be conscious of the threatening nature of his communication.) Under the force clause, the question is whether communicating such a threat to injure is a threat to use physical force. The simple answer is yes.

The defendant argues that the threatened physical force must be violent force, citing Johnson v. United States, 559 U.S. 133 (2010), which elucidates this definition in the context of sentencing under the Armed Career Criminal Act. What Johnson said was that "physical force means *violent* force—that is, force capable of causing physical pain or injury to another person." Id. at 140 (emphasis in original).[12] That is precisely the nature of the threat made criminal by the statute to which this defendant pleaded guilty—threatening to *injure* the person of another.

There is no First Circuit case directly on point. The defendant cites Whyte v. Lynch, 807 F.3d 463 (1st Cir. 2015), a deportation case, where the court

---

called the modified categorical approach. The parties here agree that the relevant element of this defendant's crime is the communication of a threat to injure the person of another, not of a threat to kidnap.

[12] In Johnson v. United States, 559 U.S. 133, 138 (2010), the underlying Florida conviction of battery could be committed merely by intentional (and unconsented) touching.

7

concluded that a conviction under Connecticut's third-degree assault statute did not have violent force as an element. But in Whyte the defendant had pleaded nolo contendere to *causing* physical injury, id. at 467-68, and the court said "[w]e therefore confine our review to this prong of the state law." Id. at 468. Thus, Whyte was not a threat case. Whyte concluded that there was a realistic probability that under the Connecticut statute, Connecticut could punish conduct that resulted in physical injury without the use of violent force. Id. at 469. There is no such realistic probability about this federal statute criminalizing a threatening communication to injure another person. The defendant has not explained how one can threaten to injure the person of another without such a threat implying the use of violent force to do so.[13] As Whyte stated, "[t]here must be a realistic probability, not a theoretical possibility," that the statute applies without the threat of violent force. Id. at 467 (internal quotations and citations omitted).

And while there are no First Circuit cases directly on point, cases from other Circuits uniformly find that a parallel statute criminalizing a *mailed* threat

---

[13] In its non-threat scenario, Whyte v. Lynch, 807 F.3d 463, 469 (1st Cir. 2015), gave this example: "a person could intentionally cause physical injury by 'telling the victim he can safely back his car out while knowing an approaching car driven by an independently acting third party will hit the victim.'" The defendant has not explained how that scenario would work in a threat-to-injure case. Under the parallel statute for mailed threats, 18 U.S.C. § 876(c), the Ninth Circuit has stated: "There may be circumstances in which a kidnapping itself can be accomplished by means other than force (for example, by deceit). But we conclude that there is no 'realistic probability,' as distinct from a 'theoretical possibility' that a communication would threaten to kidnap a person by means other than physical force." United States v. Spangle, 617 Fed. App'x 764, 765 (9th Cir. 2015) (citations omitted). The same is true for threats to injure. Likewise, in United States v. Haileselassie, 668 F.3d 1033, 1035 (8th Cir. 2012), the Eighth Circuit distinguished (and said the Supreme Court distinguished) the use of force from "an attempted or threatened use of force," and said that a threat to use force "in the ordinary case is violent physical force."

8

to injure someone, section 876(c),[14] does amount to a crime of violence. In United States v. Chapman, 866 F.3d 129, 134-35 (3rd Cir. 2017), cert. denied, 138 S. Ct. 1582 (2018), for example, the court concluded that physical force requires violent force, and "knowingly mailing a communication threatening to injure the person of the addressee or of another necessarily threatens the use of physical force" and "qualifies as a crime of violence." Chapman listed cases from the Fourth, Fifth, Eighth and Ninth Circuits as reaching the same conclusion. Id. at 135 n.7. I find Chapman and the other cases persuasive on how the First Circuit would approach a threat case like this. I conclude therefore that the communicated threat crime under section 875(c) is a crime of violence.

## Conclusion

For all these reasons, I conclude that the defendant has pleaded guilty to a crime that requires detention pending sentencing unless he qualifies for release due to "exceptional reasons."[15]

**So Ordered.**

**Dated this 24th day of January, 2019**

/s/ D. Brock Hornby
**D. Brock Hornby**
**United States District Judge**

---

[14] Section 876(c) prohibits the *mailing* of communications containing "any threat to injure the person of the addressee or of another." Sections 876(c) and 875(c) thus differ only with regard to the manner in which the threat is communicated.

[15] The defendant invokes the rule of lenity in his argument about how the provisions of the Bail Reform Act should be interpreted in his case. As Lockhart holds, the rule of lenity is used when a statute is ambiguous. "We will not apply the rule of lenity to override a sensible grammatical principle buttressed by the statute's text and structure." 136 S. Ct. at 968. There is no ambiguity here that calls for application of the rule of lenity.