UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| VS. | *   DOCKET NO. 2:18-cr-188-DBH |
| | * |
| AUSTIN SANTORO | * |
| | * |

**SENTENCING MEMORANDUM UNDER § 3553(a)**

Now comes the defendant, by and through counsel, and submits the following as his Sentencing Memorandum related to the factors to be considered in imposing sentence under 18 U. S. C. § 3553(a).

**1.   Guidelines**

The government has withdrawn its support for the report's application of the "sophisticated means" enhancement in connection with count two. Accordingly, it appears the parties are in agreement that the guidelines, as properly calculated, produce a total offense level of 17 at criminal history category I, and result in an advisory guideline range of 24-30 months. This result is achieved whether the court sustains or overrules the government's objection to the report's failure to assign a three level increase in count two on the basis that the victim of count 2 is a "government officer or employee." The defendant suggests, therefore, that any enhancement based on the "government officer or employee" issue is moot, and there is no genuine need for the court to reach or resolve this question of law, as it has no bearing on the determination of the appropriate guidelines.

## 2. The Detention and Release History

Austin Santoro was arrested on March 29, 2018, on a warrant arising from a criminal complaint charging, among other things, multiple counts of transmitting threatening communications and identity theft. His initial appearance was the next day, and he was temporarily detained on the government's motion. On April 3, 2018, Santoro was released on a $10,000 unsecured bond and pursuant to an order setting conditions of release. The Order released him to the custody of his father and directed that he reside at his parent residence in York, Maine. On April 22, 2018, approximately three weeks later, a physical confrontation occurred between Austin and his father, Stuart, at their York residence which resulted in police involvement. The origin of the dispute was uncertain, but Stuart reported to USPO Phillips that he has been unable to sleep at night because Austin has been screaming during the night and breaking property around the house. As a result, Austin was arrested,[1] and the government brought a motion to revoke his order setting conditions of release.

Before a bail hearing could occur, counsel for the defendant filed a motion on May 3, 2018, seeking an evaluation of both competency and sanity, and an order issued from the court on June 5, 2018, committing Austin to the custody of the Attorney General for the requested evaluations. The reports of his evaluations for competency and sanity reached the court on November 8, 2018. A competency hearing occurred on December 17, 2018, at

---

[1] The resulting charge was eventually declined by the York County District Attorney's Office. *See* ●¶¶7 and 50. Pursuant to *United States v. Marrero-Perez,* 914 F.3d 20, 22 (1st Cir. 2019), "as a matter of judicial policy, in this case and henceforth, no weight should be given in sentencing to arrests not buttressed by convictions or independent proof of conduct." This determination applies as well to the entries in ¶¶47 and 48.

which counsel for both parties agreed to the evaluation report as the record evidence. The defendant was determined to be competent to stand trial, and he immediately thereafter, at the same December 17, 2018, hearing, waived Grand Jury and entered a plea of guilty to an Information charging one count of Transmitting Threatening Interstate Communications, in violation of 18 U. S. C. § 875(c), and one count of Identity Theft, in violation of 18 U. S. C. § 1028(a)(7).

Austin Santoro sought release on conditions at the December 17, 2018, hearing. His motion raised several issues of law that were briefed for the court, and the matter was resolved on January 22, 2019, when the court issued an Order Setting Conditions of Release. This Order remains in place.

As of the date of the sentencing hearing scheduled for May 20, 2019, Austin will have nine months of credited time served in custody. It has now been four months since he was release on the order setting conditions of release, and his release has been without violation.

**3.   Mental Health History**

One of the defendant's primary mitigation arguments under § 3553(a) involves Austin's extensive prior mental health history that dates back to his childhood. That history is detailed in ¶¶58-63 of the revised report. Additionally, the court has available the evaluation reports on competency and sanity that were entered into the record under seal for the purposes of the competency hearing of December 17, 2018. Those are available to the court in the record of this case at Docket No. 2:18-cr-188-DBH (ECF No. 55). The court's attention is directed there, and it is requested that the court review those reports in

anticipation of sentencing. It appears that Austin's diagnosis has presented problems for the medical community as it has historically varied from one care provider to the next, and even varied between the hospitals to which he had brief admissions. The work done at the Federal Medical Center at Fort Devens is the product of the most extended commitment and the most focused period of observation provided for Austin, and the report reflects the complexity of his condition. While his condition certainly did not render him incapable of knowing the difference between right and wrong, there also is little doubt that his "extremely poor capacity to tolerate and manage distress" played a role in his behaviors. The competency report states that he has "historically acted impulsively and destructively when emotionally overwhelmed," and that "[a] degree of obsessive ruminations related to his father's behaviors does appear to have played a role in maintaining his high level of distress."

**4.    Post-Release Adjustment**

Austin has now been released from custody for four months. He started this period living with his aunt, Tania Slaimen-Delgado, in West Springfield, Massachusetts. He was evaluated in a diagnostic session at Behavioral Health Network's Liberty Street Clinic in Springfield, MA, two days after his release, and he has treated with them steadily thereafter. The defendant has submitted, as Exhibit 1, a letter from the office manager at BHN that confirms the dates of his sessions since January 24, 2019, forward. he has essentially met weekly with his clinician, Sheri Kurtz, along with two follow up sessions with Cassandra Nava to evaluate and manage his medications. Austin has responded well to a regime of Zoloft and Lamictal as treatment for depression and mood stabilization.

Austin has also managed to find employment in multiple part time jobs while on release. Defendant's Exhibit 7 reflects Austin's employment at OMS Hospitality Group, Inc., Mayval Farm, and The Good Dog Spot, over dates that range from early February to early April.[2] The first position with OMS Hospitality involved a job as a waiter/server at a banquet hall called "Chez Joseph." While it was a slow event season, Austin nevertheless maintained a steady source of income through the end of March. The second job was as a laborer/farm hand on a cattle ranch outside of Springfield. The third job involved pet day care. Unfortunately, right after he started at The Good Dog Spot, one of the employees did a google search regarding Austin and discovered his pending criminal case. This led to his dismissal from the job.

There have been some difficulties in with Austin's residential arrangements with his aunt and Grandmother that led to the need to make other arrangements. First, Tania Slaimen-Delagado's husband, who does not live with Tania on a steady basis, had problems with the presence of Austin in the home. Additionally, Austin has continued to be subject to obsessive behaviors, such as night screaming, that created a nuisance for Tania and the older children living with her. This led to Austin moving to his Grandmother's home, and, over time, similar difficulties arose. Austin's parents have supported him by paying for a residential arrangement that allowed Austin to live alone, and this appeared to make circumstances much better. Austin anticipated being sentenced on May 2, 2019, but counsel was ill and

---

[2] Austin informs that he also worked for a few weeks in either March or April in another hospitality job as a waiter/server at a country club in Westfield, MA called "Tekoa."

could not keep the date. This led to Austin moving back to Maine for the last three weeks. It would be Austin's plan to return to the Springfield area where he has developed treatment relationships that are working, and where he has had good luck with finding employment.

**5.     Mitigation Arguments**

Austin is now 23 years old. He is a bright and talented young man who has been plagued by mental health problems from a young age. It is not uncommon for mental health issues to develop or worsen in adolescence through early adulthood, and that appears to be what has happened with Austin. Prior to this matter Austin had no juvenile adjudications, and no adult criminal convictions. His criminal history score is zero, placing him in criminal history category I. This conduct, occurring when Austin was 22 years old, is his first offense.

The impact of his deteriorating mental health can be seen in the unraveling of his academic performance. Austin graduated from York High School in June of 2014, carrying a course load of primarily honors-level classes, with grades ranging from average to above-average. He attended the New England Institute of Art for the fall semester of 2014, and then was admitted to Boston University in the spring of 2015. He attended BU for three semesters, studying business administration and management. Austin's mental health issues began to undermine his ability to bring a disciplined and productive focus to his academic endeavors around this time, and this led to his leave of absence from BU effective in the fall of 2016. He next attended the College of Central Florida from the fall of 2016 to the summer of 2017, garnering a grade point average of 1.93 for the fall semester, and ultimately dropping out during the next semester. He then went on to York County Community College, where he

again did poorly, and ultimately engaged in the conduct associated with this case.

One would not expect much of a work history from a 22 year old student, and Austin's history is consistent with this notion. He did report seasonal work at York's Wild Kingdom, and seasonal work as a dishwasher at Ruby's restaurant. He also had summer jobs from ages 16-20 at the Lobster House in York as a waiter/dishwasher. His last formal position was working for a filling station in Charlotte, North Carolina, in March of 2018.

While these are low level summer jobs for a student, they do appear to reflect consistent employment during the off months from school, and this history is consistent with his efforts to find employment over the last four months despite the obstacles presented by his present legal circumstances.

**6.     Requested Disposition**

The defendant is asking this court to consider the imposition of a "time served" sentence of imprisonment. The guidelines advise a term of one to three years of supervised release, and the defendant asks this court to consider a mid-range term of supervised release with all of the mandatory, standard, and special conditions spelled out in the report.

Austin has already served nine months of imprisonment, and he has now taken the first difficult steps toward rehabilitation during the last four months of release. He has reached out to mental health care providers and has kept his appointments. He has maintained his regimen of medications, and sought out employment that does not present stressors that he might find difficult to manage. He has remained violation free, and he has focused on the initial steps of reclaiming some normalcy in his life.

Nothing would be gained from returning Austin Santoro to prison. All of his rehabilitation efforts over the last four months would be compromised in a very destructive way. Whatever community he will ultimately be released to is best served if the court "provide[s] the defendant with needed educational or vocational training, medical care [including mental health care], or other correctional treatment in the most effective manner." § 3553(a)(2)(C) and (D). Additional imprisonment will not "reflect the seriousness of the offense, [] promote respect for the law, [or] provide just punishment for the offense" that would be, in any materially meaningful way, to a greater degree than the nine months imprisonment Austin has already served. § 3553(a)(2)(a). The time the defendant has already served has been very difficult for him, and it adequately serves the interests of both general and specific deterrence. § 3553(a)(2)(B). As punishment for Austin Santoro's first offense, the time he has already served is "sufficient, but not greater than necessary to comply with the purposes" of criminal sentencing. § 3553(a).

For all of these reasons, the defendant ask the court to impose the sentence requested and recommended herein.

Dated: May 19, 2019  /s/ J. Hilary Billings
J. Hilary Billings, Esq
Assistant Federal Public Defender
Counsel for the Defendant
P.O. Box 595
Portland, Me 04112-0595
207-553-7070
FAX: 553-7017
J.Hilary.Billings@fd.org

## CERTIFICATE OF SERVICE

I, J. Hilary Billings, hereby certify that I have caused, this date, the within Sentencing Memorandum on § 3553(a) Issues to be served upon Assistant United States Attorney Craig Wolff, Esq., by forwarding a copy to him, via the Court's ECF System.

Dated: May 19, 2019                             /s/ J. Hilary Billings
                                                J. Hilary Billings, Esq.
                                                Counsel for the Defendant